FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2016 MAY 23 PM 1:25

MIDDLE DISTRICT ~~~~
ORLANDO, FL

| | |
|---|---|
| STEPHANIE FEULNER, ) | |
| VERNON HITCHNER, ) | |
| VICTORIA SHUGART ) | |
| ) | |
| Plaintiffs, ) | Case No. |
| ) | ʊ:16-CV-875-ORL-40-DAB |
| vs. ) | |
| ) | |
| SOUTH REHABILITATION ) | |
| CENTER, INC., DEDRIX DAKA ) | |
| ) | |
| DEFENDANTS. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFFS, STEPHANIE FEULNER ("FEULNER"), VERNON HITCHNER

("HITCHNER"), and VICTORIA SHUGART ("SHUGART") (collectively, the

"PLAINTIFFS"), by and through their undersigned counsel, sue the DEFENDANTS, SOUTH

REHABILITATION CENTER, INC., ("SOUTH REHABILITATION") and DEDRIX DAKA

("DAKA"), (collectively "DEFENDANTS"), and state as follows:

### INTRODUCTION

1.     This is an eight count action by PLAINTIFFS against DEFENDANTS,

their former employer, for unpaid overtime under the Fair Labor Standards Act of 1938, as

amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), unpaid wages under Florida common law, breach

of oral contract related thereto, and unjust enrichment. PLAINTIFFS seek all wages due to them

under the law, liquidated damages where applicable, and their reasonable attorney's fee and

costs.

## JURISDICTION

2.      Counts I, II, and III arise under the FLSA, 29 U.S.C. § 201, *et seq*.  This Court has jurisdiction over claims filed under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3.      Counts IV, V, and VI of this action arise under Florida common law for unpaid wages and this Court has supplemental jurisdiction over claims filed under Florida common law for unpaid wages pursuant to 28 U.S.C. § 1367.

4.      Count VII of this action arises under Florida common law for breach of an oral contract by and between DEFENDANTS and PLAINTIFF FEULNER seeking promised payment for services performed.  This Court has supplemental jurisdiction over claims filed under Florida common law for unpaid wages pursuant to 28 U.S.C. § 1367.

5.      Count VIII of this action arises under Florida common law for unjust enrichment, or breach of a quasi-contract, for DEFENDANTS' unjust retention of benefits conferred by PLAINTIFF FEULNER.

## VENUE

6.      The venue of this Court over this controversy is proper based upon the claim arising in Orange County, Florida.

## THE PARTIES

7.      DAKA is/was, during the relevant time period, the owner of South Rehabilitation Center, Inc.

8.      DAKA is/was, during the relevant time period, a corporate officer of SOUTH REHABILITATION.

9.     DAKA has/had, during the relevant time period, operational control over SOUTH REHABILITATION.

10.    DAKA has/had, during the relevant time period, a supervisory role at SOUTH REHABILITATION

11.    DAKA has/had, during the relevant time period, supervised SOUTH REHABILITATION employees.

12.    As the "Founder" of SOUTH REHABILITATION, DAKA had significant ownership interest in SOUTH REHABILITATION.

13.    As the Founder and Owner of SOUTH REHABILITATION, DAKA not only supervised and controlled employee work schedules and conditions of employment, but DAKA spearheaded the decision to not pay employees for work performed.

14.    As a result of spearheading the decision to not pay employees for work performed, DAKA had personal responsibility for the decision that lead to employees being unlawfully deprived of minimum wages, unpaid wages, and overtime pay.

15.    As the Owner of SOUTH REHABILITATION, DAKA had control of significant aspects of SOUTH REHABILITATION'S day to day operations, including compensation of the employees.

16.    DAKA acted directly or indirectly in the interest of himself and/or SOUTH REHABILITATION in relation to PLAINTIFFS.

17.    DAKA has/had during the relevant time period, substantial control related to SOUTH REHABILITATION's FLSA obligations and played a substantial role in causing the FLSA violation against Plaintiffs.

18.     DAKA is/was, during the relevant time period, the majority shareholder of SOUTH REHABILITATION.

19.     DAKA is/was, during the relevant time period, receiving distributions of SOUTH REHABILITATION's profits according to his percentage ownership of SOUTH REHABILITATION.

20.     DAKA is/was, during the relevant time period, the final decision maker regarding employment related polices, including compensation for all SOUTH REHABILITATION employees.

21.     DAKA implemented all or the majority of employment related policies for all SOUTH REHABILITATION employees.

22.     DAKA creates and implements all decisions regarding compensation of the employees at SOUTH REHABILITATION.

23.     DAKA enforced any and all employment or compensation related policies he created for the SOUTH REHABILITATION employees.

24.     DAKA does/did, for the relevant time period, work at the SOUTH REHABILITATION office on weekly basis.

25.     FEULNER was an independent contractor with DEFENDANTS from July 15, 2014 until November 30, 2014.

26.     The DEFENDANTS had an oral contract with FEULNER from July 15, 2014 until November 30, 2014.

27.     FEULNER was an "employee" of the DEFENDANTS starting December 1, 2014 and all times relevant hereto.

28.     DEFENDANTS were, starting December 1, 2014, FEULNER'S "employer" as that term is defined by 29 U.S.C. § 203(d).

29.     HITCHNER and SHUGART were, at all times relevant hereto, "employees" of the DEFENDANTS as that term is defined by 29 U.S.C. § 203(e).

30.     The DEFENDANTS were, at all times relevant hereto, HITCHNER and SHUGART'S "employer" as that term is defined by 29 U.S.C. § 203(d). DEFENDANTS are a mental health and substance abuse clinic whose services include HIV/AIDS prevention and counseling, and mental health services for seniors and children.

31.     PLAINTIFFS were, at all times relevant to the violations of the FLSA, through the performance of their job duties, engaged in commerce as defined by 29 U.S.C. § 203(b). Collectively, PLAINTIFFS engaged in out of state phone calls, dealt with out of state insurance payments, performed the acceptance of out of state insurance company co-pays and self-pays on behalf of DEFENDANTS, researched and reviewed federal grants, and assisted with Medicaid audits.

32.     DEFENDANTS are and were, at all times relevant hereto, an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1).

33.     PLAINTIFFS have retained the law firm of Wilson McCoy, P.A. to represent them in this matter and have agreed to pay said firm a reasonable attorney's fee for its services.

## FACTUAL ALLEGATIONS

34.     DEFENDANTS are engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof by providing treatment for mental health and substance abuse patients.

35.     DEFENDANTS are a mental health and substance abuse clinic whose services include HIV/AIDS prevention and counseling, and mental health services for seniors and children.

### PLAINTIFF FEULNER

36.     From July 15, 2014 until November 30, 2014, FEULNER provided services to DEFENDANTS as an independent contractor.

37.     FEULNER was to be compensated for her time as an independent contractor based on a pro-rated annual salary of $45,000.00, which she would receive upon commencement of employment with DEFENDANTS on December 1, 2014.

38.     As an independent contractor, FEULNER assisted with a Medicaid audit, updated and revised company forms and policies, and helped coordinate DEFENDANTS' grand opening, fundraising, and community outreach.

39.     DEFENDANTS failed to pay for FEULNER'S services performed from July 15, 2014 until November 30, 2014.

40.     From December 1, 2014 until February 6, 2015, FEULNER was employed by DEFENDANTS.

41.     FEULNER worked as the Director of Marketing and Grant Writing at all times while employed with the DEFENDANTS.

42.     Some of FEULNER'S job duties included conducting research, collecting and compiling data, drafting and finalizing grants, performing community outreach, graphic designing, and marketing.

43.     Throughout FEULNER'S tenure with DEFENDANTS, DEFENDANTS controlled how FEULNER did her job, controlled when and where FEULNER would report to work, and solely controlled all aspects of FEULNER'S work.

44.     FEULNER consistently worked forty (40) hours per week throughout her job with DEFENDANTS.

45.     DEFENDANTS had the right to fire and/or reprimand FEULNER.

46.     FEULNER'S job duties remained the same throughout her employment with DEFENDANTS.

47.     At all times material hereto, FEULNER worked for DEFENDANTS as the Director of Marketing and Grant Writing fulfilling non-exempt work.

48.     FEULNER was paid at a rate of $45,000.00 per year.

49.     At all times material hereto, DEFENDANTS was supposed to pay FEULNER on a bi-weekly basis.

50.     During her employment with DEFENDANTS as the Director of Marketing and Grant Writing, FEULNER was scheduled to work 9:00 a.m. to 5:00 p.m. Monday through Friday.

51.     FEULNER worked hours before her official start date of December 1, 2014.

52.     DEFENDANTS never paid FEULNER for contract work performed from July 15, 2014 until November 30, 2014.

53.     DEFENDANTS failed to pay FEULNER for all of her work performed from July 15, 2014 until November 30, 2014.

54.     DEFENDANTS failed to pay FEULNER at the correct rate for work performed from December 1, 2014 until February 6, 2015

55.     For some of her pay checks, DEFENDANTS failed to correctly calculate FEULNER'S compensation for the given pay period.

56.     DEFENDANTS never paid FEULNER owed compensation for incorrect wage calculations.

57.     Throughout her employment with DEFENDANTS, FEULNER regularly worked hours in excess of forty (40) hours in a week.

58.     Under the provisions of the FLSA, employees are required to receive overtime wages at a rate of one and one-half times their normal hourly rate for hours they work in excess of forty (40) during any particular workweek unless they qualify for an FLSA exemption.

59.     DEFENDANTS did not, at any time during FEULNER'S employment with DEFENDANTS, pay FEULNER overtime for hours worked in excess of forty (40) hours in a workweek.

60.     DEFENDANTS knew or should have known that FEULNER worked in excess of forty (40) hours in a workweek.

61.     As the Director of Marketing and Grant Writing, FEULNER was not customarily and regularly engaged away from her employer's place of business or her home office.

62.     As the Director of Marketing and Grant Writing, FEULNER did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.

63.     As the Director of Marketing and Grant Writing, FEULNER did not have the ability or the authority to hire or fire other employees.

64.     As the Director of Marketing and Grant Writing, FEULNER did not have the authority to promote or recommend any other change of status of other employees.

65.     As the Director of Marketing and Grant Writing, FEULNER did not primarily perform work directly related to management or general business operations for the employer, such as assisting with the running or servicing of the business, or for the employer's customers, such as advising or consulting.

66.     As the Director of Marketing and Grant Writing, FEULNER did not have the authority to formulate, affect, interpret, or implement management policies or operating practices, instead FEULNER used her skills in applying well-established techniques, procedures or specific standards described in manuals and other sources without the authority to waive or deviate from established policies and procedures without prior approval.

67.     As the Director of Marketing and Grant Writing, FEULNER did not primarily perform work that affected the employer's operations to a substantial degree nor have the authority to commit the employer in matters that have significant financial impact.

68.     As the Director of Marketing and Grant Writing, FEULNER did not primarily compare and evaluate possible courses of conduct and act or make decisions free from immediate direction or supervision.

69.     The job duties performed by FEULNER as Director of Marketing and Grant Writing was such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), FEULNER should have rightly been classified as a non-exempt employee and eligible for overtime wages.

70.     DEFENDANTS did not record or otherwise maintain records of the hours worked each day or each workweek

71.     DEFENDANTS know or should have known that its former and current policies regarding payment of overtime wages as described herein violate the FLSA as they pertained to FEULNER and/or the position of Director of Marketing and Grant Writing.

72.     As an employer, DEFENDANTS are responsible for the illegal conduct and policies described herein related to the failure to comply with the provisions of the FLSA as applied to FEULNER during the time she served as Director of Marketing and Grant Writing.

73.     As a result of the actions of DEFENDANTS in not paying legally required overtime wages to FEULNER, FEULNER has suffered economic damages.

74.     The actions of DEFENDANTS in deliberately failing to pay FEULNER overtime wages were done for the purpose of enriching and benefitting DEFENDANTS.

75.     FEULNER complained to DEFENDANTS that she was not being paid properly on multiple occasions.

76.     FEULNER complained to DEFENDANTS that she was not being paid properly via email.

77.     FEULNER complained to DEFENDANTS that she was not being paid properly via text messages.

78.     FEULNER complained to DEFENDANTS that she was not being paid properly via telephone calls.

### PLAINTIFF SHUGART

79.     From May 21, 2014 until July 3, 2015, SHUGART was employed by DEFENDANTS.

80.     SHUGART worked as the Office Manager at all times while employed with the DEFENDANTS.

81.     Some of SHUGART'S duties included preparing the office for the company's opening, assisted with hiring and interviewing job candidates, marketing, inventory, and office management. SHUGART also accepted out of state insurance company co-pays and self-pay on behalf of DEFENDANTS.

82.     Throughout SHUGART'S tenure with DEFENDANTS, DEFENDANTS controlled how SHUGART did her job, controlled when and where SHUGART would report to work, and solely controlled all aspects of SHUGART'S work.

83.     SHUGART consistently worked forty (40) hours per week throughout her job with DEFENDANTS.

84.     SHUGART used only DEFENDANTS' supplies to perform her job.

85.     DEFENDANTS had the right to fire and/or reprimand SHUGART.

86.     SHUGART'S job duties remained the same throughout her employment with DEFENDANTS.

87.     At all times material hereto, SHUGART worked for DEFENDANTS as the Office Manager fulfilling non-exempt work.

88.     SHUGART was paid at a rate of $12.80 per hour.

89.    At all times material hereto, DEFENDANTS was supposed to pay SHUGART on a bi-weekly basis.

90.    DEFENDANTS failed to pay SHUGART for portions of her earned wages.

91.    During her employment with DEFENDANTS as the Office Manager, SHUGART was scheduled to work 9:00 a.m. to 5:00 p.m. Monday through Friday.

92.    For some of her pay checks, DEFENDANTS failed to correctly calculate SHUGART'S compensation for the given pay period.

93.    DEFENDANTS never paid SHUGART owed compensation for incorrect wage calculations.

94.    Throughout her employment with DEFENDANTS, SHUGART regularly worked hours in excess of forty (40) hours in a week.

95.    Under the provisions of the FLSA, employees are required to receive overtime wages at a rate of one and one-half times their normal hourly rate for hours they work in excess of forty (40) during any particular workweek unless they qualify for an FLSA exemption.

96.    DEFENDANTS did not at any time during SHUGART'S employment with DEFENDANTS pay SHUGART overtime for hours worked in excess of forty (40) hours in a workweek.

97.    DEFENDANTS knew or should have known that SHUGART worked in excess of forty (40) hours in a workweek.

98.    DEFENDANTS knowingly and willfully violated the provisions of the FLSA by misclassifying her employment – at least a portion thereof – as exempt from the overtime provisions of the FLSA.

99.    As the Office Manager, SHUGART was not customarily and regularly engaged away from her employer's place of business or her home office.

100.    As the Office Manager, SHUGART did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.

101.    As the Office Manager, SHUGART did not have the ability or the authority to hire or fire other employees.

102.    As the Office Manager, SHUGART did not have the authority to promote or recommend any other change of status of other employees.

103.    As the Office Manager, SHUGART did not primarily perform work directly related to management or general business operations for the employer, such as assisting with the running or servicing of the business, or for the employer's customers, such as advising or consulting.

104.    As the Office Manager, SHUGART did not have the authority to formulate, affect, interpret, or implement management policies or operating practices, instead SHUGART used her skills in applying well-established techniques, procedures or specific standards described in manuals and other sources without the authority to waive or deviate from established policies and procedures without prior approval.

105.    As the Office Manager, SHUGART did not primarily perform work that affected the employer's operations to a substantial degree nor have the authority to commit the employer in matters that have significant financial impact.

106. As the Office Manager, SHUGART did not primarily compare and evaluate possible courses of conduct and act or make decisions free from immediate direction or supervision.

107. The job duties performed by SHUGART as Office Manager were such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), SHUGART should have rightly been classified as a non-exempt employee and eligible for overtime wages.

108. DEFENDANTS did not record or otherwise maintain records of the hours worked each day or each workweek.

109. DEFENDANTS know or should have known that its former and current policies regarding payment of overtime wages as described herein violate the FLSA as they pertained to SHUGART and/or the position of Office Manager.

110. As an employer, DEFENDANTS are responsible for the illegal conduct and policies described herein related to the failure to comply with the provisions of the FLSA as applied to SHUGART during the time she served as Office Manager.

111. As a result of the actions of DEFENDANTS in not paying legally required overtime wages to SHUGART, SHUGART has suffered economic damages.

112. The actions of DEFENDANTS in deliberately failing to pay SHUGART overtime wages were done for the purpose of enriching and benefitting DEFENDANTS.

113. SHUGART complained to DEFENDANTS that she was not being paid properly on multiple occasions.

114. SHUGART complained to DEFENDANTS that she was not being paid properly via email.

115.    SHUGART complained to DEFENDANTS that she was not being paid properly via text messages.

116.    SHUGART complained to DEFENDANTS that she was not being paid properly via telephone calls.

## PLAINTIFF HITCHNER

117.    From November 10, 2014 until June 1, 2015, HITCHNER was employed by DEFENDANTS.

118.    HITCHNER worked as a Psychological Social Rehabilitation Counselor ("PSR") at all times while employed with the DEFENDANTS.

119.    Some of HITCHNER'S duties included running the psychosocial rehabilitation groups, meeting with clients, performing admissions, and individual counseling.

120.    Throughout HITCHNER'S tenure with DEFENDANTS, DEFENDANTS controlled how HITCHNER did his job, controlled when and where HITCHNER would report to work, and solely controlled all aspects of HITCHNER'S work.

121.    HITCHNER consistently worked forty (40) hours per week throughout his job with DEFENDANTS.

122.    HITCHNER used only DEFENDANTS' supplies to perform his job.

123.    DEFENDANTS had the right to fire and/or reprimand HITCHNER.

124.    HITCHNER'S job duties remained the same throughout his employment with DEFENDANTS. This included resolving issues with out of state insurance companies.

125.    At all times material hereto, HITCHNER worked for DEFENDANTS as a PSR fulfilling non-exempt work.

126.    HITCHNER was paid at a rate of $16.00 per hour.

127.    At all times material hereto, DEFENDANTS was supposed to pay HITCHNER on a bi-weekly basis.

128.    DEFENDANTS failed to pay HITCHNER for portions of his earned wages.

129.    During his employment with DEFENDANTS as a PSR, HITCHNER was scheduled to work 8:30 a.m. to 5:00 p.m. Monday through Friday.

130.    For some of his pay checks, DEFENDANTS failed to correctly calculate HITCHNER'S compensation for the given pay period.

131.    DEFENDANTS never paid HITCHNER owed compensation for incorrect wage calculations.

132.    Throughout his employment with DEFENDANTS, HITCHNER occasionally worked hours in excess of forty (40) hours in a week.

133.    Under the provisions of the FLSA, employees are required to receive overtime wages at a rate of one and one-half times their normal hourly rate for hours they work in excess of forty (40) during any particular workweek unless they qualify for an FLSA exemption.

134.    DEFENDANTS did not at any time during HITCHNER'S employment with DEFENDANTS pay HITCHNER overtime for hours worked in excess of forty (40) hours in a workweek.

135.    DEFENDANTS knew or should have known that HITCHNER worked in excess of forty (40) hours in a workweek.

136. DEFENDANTS knowingly and willfully violated the provisions of the FLSA by misclassifying his employment – at least a portion thereof – as exempt from the overtime provisions of the FLSA.

137. As a PSR, HITCHNER was not customarily and regularly engaged away from his employer's place of business or his home office.

138. As a PSR, HITCHNER did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.

139. As a PSR, HITCHNER did not have the ability or the authority to hire or fire other employees.

140. As the PSR, HITCHNER did not have the authority to promote or recommend any other change of status of other employees.

141. As a PSR, HITCHNER did not primarily perform work directly related to management or general business operations for the employer, such as assisting with the running or servicing of the business, or for the employer's customers, such as advising or consulting.

142. As a PSR, HITCHNER did not have the authority to formulate, affect, interpret, or implement management policies or operating practices, instead HITCHNER used his skills in applying well-established techniques, procedures or specific standards described in manuals and other sources without the authority to waive or deviate from established policies and procedures without prior approval.

143. As a PSR, HITCHNER did not primarily perform work that affected the employer's operations to a substantial degree nor have the authority to commit the employer in matters that have significant financial impact.

144.    As a PSR, HITCHNER did not primarily compare and evaluate possible courses of conduct and act or make decisions free from immediate direction or supervision.

145.    The job duties performed by HITCHNER as a PSR were such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), HITCHNER should have rightly been classified as a non-exempt employee and eligible for overtime wages.

146.    DEFENDANTS did not record or otherwise maintain records of the hours worked each day or each workweek.

147.    DEFENDANTS know or should have known that its former and current policies regarding payment of overtime wages as described herein violate the FLSA as they pertained to HITCHNER and/or the position of PSR.

148.    As an employer, DEFENDANTS are responsible for the illegal conduct and policies described herein related to the failure to comply with the provisions of the FLSA as applied to HITCHNER during the time she served as a PSR.

149.    As a result of the actions of DEFENDANTS in not paying legally required overtime wages to HITCHNER, HITCHNER has suffered economic damages.

150.    The actions of DEFENDANTS in deliberately failing to pay HITCHNER overtime wages were done for the purpose of enriching and benefitting DEFENDANTS.

151.    HITCHNER complained to DEFENDANTS that he was not being paid properly on multiple occasions.

152.    HITCHNER complained verbally to DEFENDANTS that he was not being paid properly.

## COUNT I:
## VIOLATION OF THE OVERTIME PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT
## (as to PLAINTIFF FEULNER)

153.    FEULNER re-alleges and incorporates herein the allegations contained in paragraphs 1 through 78 above.

154.    Throughout the employment of FEULNER, the DEFENDANTS have repeatedly and willfully violated Section 7 of the FLSA by failing to compensate FEULNER at a rate not less than one and one-half times the regular rate at which she was employed for workweeks longer than forty (40) hours.

155.    Specifically, FEULNER worked numerous weeks in excess of forty (40) hours a week, yet she was not compensated for any hours worked in excess of forty (40) at a rate not less than one and one-half times the regular rate at which she was employed.

### PRAYER FOR RELIEF

WHEREFORE, FEULNER demands a judgment against DEFENDANTS for:

(a)    Unpaid wages found to be due and owing;

(b)    An additional amount equal to the unpaid overtime wages found to be due and owing as liquidated damages;

(c)    Prejudgment interest;

(d)    A reasonable attorney's fee and costs; and

(e)    Such other relief as this Court deems just and equitable.

## COUNT II:
### VIOLATION OF THE OVERTIME PROVISIONS OF
### THE FAIR LABOR STANDARDS ACT
### (as to PLAINTIFF SHUGART)

156.   SHUGART re-alleges and incorporates herein the allegations contained in paragraphs 1 through 35 and 79 through 116 above.

157.   Throughout the employment of SHUGART, the DEFENDANTS have repeatedly and willfully violated Section 7 of the FLSA by failing to compensate SHUGART at a rate not less than one and one-half times the regular rate at which she was employed for workweeks longer than forty (40) hours.

158.   Specifically, SHUGART worked numerous weeks in excess of forty (40) hours a week, yet she was not compensated for any hours worked in excess of forty (40) at a rate not less than one and one-half times the regular rate at which she was employed.

### PRAYER FOR RELIEF

WHEREFORE, SHUGART demands a judgment against DEFENDANTS for:

(a)   Unpaid wages found to be due and owing;

(b)   An additional amount equal to the unpaid overtime wages found to be due and owing as liquidated damages;

(c)   Prejudgment interest;

(d)   A reasonable attorney's fee and costs; and

(e)   Such other relief as this Court deems just and equitable

### COUNT III:
### VIOLATION OF THE OVERTIME PROVISIONS OF
### THE FAIR LABOR STANDARDS ACT
### (as to PLAINTIFF HITCHNER)

159.    HITCHNER re-alleges and incorporates herein the allegations contained in paragraphs 1 through 35 and 117 through 152 above.

160.    Throughout the employment of HITCHNER, the DEFENDANTS have repeatedly and willfully violated Section 7 of the FLSA by failing to compensate HITCHNER at a rate not less than one and one-half times the regular rate at which he was employed for workweeks longer than forty (40) hours.

161.    Specifically, HUTCHNER worked numerous weeks in excess of forty (40) hours a week, yet he was not compensated for any hours worked in excess of forty (40) at a rate not less than one and one-half times the regular rate at which he was employed.

### PRAYER FOR RELIEF

WHEREFORE, HITCHNER demands a judgment against DEFENDANTS for:

(a)    Unpaid wages found to be due and owing;

(b)    An additional amount equal to the unpaid overtime wages found to be due and owing as liquidated damages;

(c)    Prejudgment interest;

(d)    A reasonable attorney's fee and costs; and

(e)    Such other relief as this Court deems just and equitable

### COUNT IV:
### COMMON LAW UNPAID WAGES
### (as to PLAINTIFF FEULNER)

162.    FEULNER re-alleges and incorporates herein the allegations contained in paragraphs 1 through 78 and 153 through 155 above

Page **21** of 27

163.   FEULNER performed work while employed for DEFENDANTS.

164.   DEFENDANTS promised to pay FEULNER a specific wage for the work performed for DEFENDANTS.

165.   DEFENDANTS never paid FEULNER for fully earned wages.

166.   DEFENDANTS failed to correct miscalculations in earned wages.

167.   DEFENDANTS failed to pay FEULNER for all wages earned after it was notified.

168.   DEFENDANTS have, therefore, willfully failed to pay FEULNER wages due to her.

169.   The foregoing conduct, as alleged, has resulted in unpaid wages due to FEULNER under Florida common law.

170.   Due to DEFENDANTS' failure to pay wages to FEULNER, DEFENDANTS have violated and continues to violate Florida common law.

171.   Pursuant to §448.08, Florida Statutes, FEULNER is entitled to recover costs and reasonable attorney's fees for the DEFENDANTS'S actions.

## **PRAYER FOR RELIEF**

WHEREFORE, FEULNER demands a judgment against DEFENDANTS for:

(a)    Unpaid wages found to be due and owing.

(b)    Prejudgment interest;

(c)    A reasonable attorney's fee and costs; and

(d)    Such other relief as this Court deems just and equitable.

## COUNT V:
## COMMON LAW UNPAID WAGES
### (as to PLAINTIFF SHUGART)

172.    SHUGART re-alleges and incorporates herein the allegations contained in paragraphs 1 through 35, 79 through 116, and 156 through 158 above.

173.    SHUGART performed work while employed for DEFENDANTS.

174.    DEFENDANTS promised to pay SHUGART a specific wage for the work performed for DEFENDANTS.

175.    DEFENDANTS never paid SHUGART for fully earned wages.

176.    DEFENDANTS failed to correct miscalculations in earned wages.

177.    DEFENDANTS failed to pay SHUGART for wages earned after it was notified.

178.    DEFENDANTS have, therefore, willfully failed to pay SHUGART wages due to her.

179.    The foregoing conduct, as alleged, has resulted in unpaid wages due to SHUGART under Florida common law.

180.    Due to DEFENDANTS' failure to pay wages to SHUGART, DEFENDANTS have violated and continues to violate Florida common law.

181.    Pursuant to §448.08, Florida Statutes, SHUGART is entitled to recover costs and reasonable attorney's fees for the DEFENDANTS'S actions.

### PRAYER FOR RELIEF

WHEREFORE, SHUGART demand a judgment against DEFENDANTS for:

(a)    Unpaid wages found to be due and owing.

(b)    Prejudgment interest;

(c)     A reasonable attorney's fee and costs; and

(d)     Such other relief as this Court deems just and equitable

## COUNT VI:
## COMMON LAW UNPAID WAGES
### (as to PLAINTIFF HITCHNER)

182.    HITCHNER re-alleges and incorporates herein the allegations contained in paragraphs 1 through 35, 117 through 152, and 159 through 161 above.

183.    HITCHNER performed work while employed for DEFENDANTS.

184.    DEFENDANTS promised to pay HITCHNER a specific wage for the work performed for DEFENDANTS.

185.    DEFENDANTS never paid HITCHNER for fully earned wages.

186.    DEFENDANTS failed to correct miscalculations in earned wages.

187.    DEFENDANTS failed to pay HITCHNER for wages earned after it was notified.

188.    DEFENDANTS have, therefore, willfully failed to pay HITCNER wages due to him.

189.    The foregoing conduct, as alleged, has resulted in unpaid wages due to HITCHNER under Florida common law.

190.    Due to DEFENDANTS' failure to pay wages to HITCHNER, DEFENDANTS have violated and continues to violate Florida common law.

191.    Pursuant to §448.08, Florida Statutes, HITCHNER is entitled to recover costs and reasonable attorney's fees for the DEFENDANTS'S actions.

## PRAYER FOR RELIEF

WHEREFORE, HITCHNER demand a judgment against DEFENDANTS for:

(a)    Unpaid wages found to be due and owing.

(b)    Prejudgment interest;

(c)    A reasonable attorney's fee and costs; and

(d)    Such other relief as this Court deems just and equitable

## COUNT VII:
## BREACH OF ORAL CONTRACT
## (as to FEULNER)

192.    FEULNER re-alleges and incorporates herein the allegations contained in paragraphs 1 through 78, 153 through 155, and 162 through 171 above.

193.    FEULNER performed work as an independent contractor from July 15, 2014 through November 30, 2014.

194.    FEULNER was to be compensated for her time as an independent contractor based on a pro-rated annual salary of $45,000.00, which she would receive upon commencement of employment with DEFENDANTS on December 1, 2014.

195.    Under such agreement, FEULNER performed research and drafted a grant for DEFENDANTS. FEULNER also updated and revised company forms and policies, assisted with a Medicaid audit, and coordinating DEFENDANTS' grand opening, fundraising, and community outreach.

196.    DEFENDANTS never paid FEULNER for her work performed as an independent contractor despite the parties' oral agreement.

### PRAYER FOR RELIEF

WHEREFORE, FEULNER demands a judgment against DEFENDANTS for:

(a)    All sums found to be due and owing under the contract;

(b)     Prejudgment interest;

(c)     A reasonable attorney's fee and costs; and

(d)     Such other relief as this Court deems just and equitable.

## COUNT VIII:
## UNJUST ENRICHMENT AND BREACH OF QUASI-CONTRACT
### (as to FEULNER)

197.    FEULNER re-alleges and incorporates herein the allegations contained in paragraphs 1 through 78, 153 through 155, 162 through 171, and 192 through 196 above.

198.    FEULNER performed work as an independent contractor from July 15, 2014 through November 30, 2014.

199.    FEULNER was to be compensated for her time as an independent contractor based on a pro-rated annual salary of $45,000.00, which she would receive upon commencement of employment with DEFENDANTS on December 1, 2014.

200.    Under such agreement, FEULNER performed research and drafted a grant for DEFENDANTS. FEULNER also updated and revised company forms and policies, assisted with a Medicaid audit, and coordinating DEFENDANTS' grand opening, fundraising, and community outreach.

201.    DEFENDANTS never paid FEULNER for her work performed as an independent contractor despite the parties' oral agreement.

202.    FEULNER conferred benefits to DEFENDANTS.

203.    DEFENDANTS had knowledge of the benefits provided by FEULNER.

204.    DEFENDANTS accepted the benefits provided by FEULNER.

205.    DEFENDANTS retained the benefits provided by FEULNER.

206.   The circumstances make it unjust for DEFENDANTS to retain benefits without compensating FEULNER.

## PRAYER FOR RELIEF

WHEREFORE, FEULNER demands a judgment against DEFENDANTS for:

(a)   All sums found to be due and owing under the contract;

(b)   Prejudgment interest;

(c)   A reasonable attorney's fee and costs; and

(d)   Such other relief as this Court deems just and equitable

## DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a trial by jury on all issues so triable.

DATED this 19 day of May, 2016.

Respectfully submitted,

Louis Montone
Florida Bar No. 112096

Nathan A. McCoy
Florida Bar No. 0676101

WILSON MCCOY, P.A.
711 N. Orlando Ave, Suite 202
Maitland, Florida 32751
Telephone:   (407) 803-5400
Facsimile:   (407) 803-4617
E-Mail:lmontone@wilsonmccoylaw.com
nmccoy@wilsonmmccoylaw.com

TRIAL COUNSEL for the PLAINTIFFS